IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

LAVINA D. JERNAGIN, )
)
Plaintiff, )
)
v. )    Case No. 1:12-cv-1285 (GBL-TCB)
)
JOHN M. MCHUGH, )
Secretary of the Army, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on the three-day nonjury trial of Plaintiff Lavina D. Jernagin's claim against her employer Defendant John M. McHugh, Secretary of the Army, of age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"). Ms. Jernagin, an Army employee, alleges that her second-line supervisor, Mary Costa, ordered Larry Lawson, her first-line supervisor, to rate Ms. Jernagin a "2" out of "5" on a 2007 performance appraisal because Ms. Jernagin was over the age of fifty.

The issue before the Court is whether age bias by Ms. Costa was the but-for cause of Ms. Jernagin's "2" rating, where Ms. Jernagin alleges that (i) Ms. Costa made several age-related comments to Ms. Jernagin and her coworkers, (ii) Ms. Costa ordered Mr. Lawson to rate Ms. Jernagin a "2," and (iii) Ms. Costa as the Reviewing Official and Pay Pool Manager had power over the rating assigned to Ms. Jernagin. The Court holds that Ms. Jernagin has failed to establish by a preponderance of the evidence that Ms. Costa's age bias was the but-for cause of the "2" rating for two reasons. First, contrary to Ms. Jernagin's allegations, the evidence showed that Sergeant Travania Fair, not Ms. Costa, made the decision to rate Ms. Jernagin a "2" and,

second, the evidence showed that Ms. Costa's role with respect to the rating was largely administrative. For these reasons, the Court enters judgment in favor of Defendant.

## I. STANDARD OF REVIEW

In a nonjury case, the court must make specific findings of fact and separately state its conclusions of law. Fed. R. Civ. P. 52(a)(1). The trial judge's function is to find the facts, weigh the evidence, and choose from conflicting inferences and conclusions those which he considers most reasonable. *Penn-Texas Corp. v. Morse*, 242 F.2d 243, 247 (7th Cir. 1957) (citation and internal quotation marks omitted). The trial judge has the inherent right to disregard testimony of any witness if satisfied that the witness is not telling the truth, or the testimony is inherently improbable due to inaccuracy, uncertainty, interest, or bias. *Id.*; *see also Columbus-American Discovery Grp. v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 567 (4th Cir. 1995) (internal quotation omitted) (stating that the factfinder is in a better position to make judgments about the reliability of some forms of evidence, including the credibility of witnesses). It is the duty of the trial judge sitting without a jury to appraise the testimony and demeanor of witnesses. *See Burgess v. Farrell Lines, Inc.*, 335 F.2d 885, 889 (4th Cir. 1964).

To satisfy the demands of Rule 52, a trial court must do more than announce statements of ultimate fact. *United States ex rel. Belcon, Inc. v. Sherman Constr. Co.*, 800 F.2d 1321, 1324 (4th Cir. 1986) (citation omitted). The trial court must support its rulings by spelling out the subordinate facts on which it relies. *Id.* The language of Rule 52 has been construed to

> not require the court to make findings on all facts presented or to make detailed evidentiary findings; if the findings are sufficient to support the ultimate conclusion of the court they are sufficient. Nor is it necessary that the trial court make findings asserting the negative of each issue of fact raised. It is sufficient if the special affirmative facts found by the court, construed as a whole, negative each rejected contention. The ultimate test as to the adequacy of the findings will always be whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision and whether they are supported by the evidence.

2

*Darter v. Greenville Cmty. Hotel Corp.*, 301 F.2d 70, 75 (4th Cir. 1962). This rule does not require that the trial court set out findings on the myriad of factual questions that arise in a case. *Golf City, Inc. v. Wilson Sporting Goods*, 555 F.2d 426, 433 (5th Cir. 1977). The sufficiency of the trial court's findings depends on the particular facts of each individual case, and no general rule can govern. *Darter*, 301 F.2d at 75.

## II. PROCEDURAL HISTORY

On May 10, 2013, Ms. Jernagin filed her Second Amended Complaint in this Court, alleging discrimination by Army officials on the basis of Ms. Jernagin's race, sex, and age. Ms. Jernagin requested compensatory damages as well as declaratory and equitable relief. On July 5, 2013, Ms. Jernagin voluntarily dismissed her claims of race and sex discrimination, leaving age discrimination as the sole remaining claim.

## III. FINDINGS OF FACT

1. Plaintiff Lavina Jernagin was born in 1948 and began civilian employment with the United States Army ("Army") in 1997. At all times relevant to her claim, Ms. Jernagin worked as a Logistics Management Specialist with the Army's Directorate of Logistics ("DOL") in Arlington, Virginia. At all times relevant to the claim, Mary Costa, who was born in 1954, served as Director of DOL.

2. Ms. Jernagin worked under a number of different supervisors while at DOL. In 2003 and 2005, Ms. Jernagin received annual performance ratings of "Outstanding" or "Excellent." In 2007, Ms. Jernagin received an annual performance rating of "Fair" or "2," the second lowest rating possible. Ms. Jernagin's "Outstanding" and "Excellent" ratings were awarded under the Total Army Performance Evaluation System ("TAPES"). Ms. Jernagin's "Fair" or "2"

rating was awarded under the National Security Personnel System ("NSPS"), a rating system introduced by the Army in 2007 to replace the TAPES system.

3.  At trial, Ann McRae Thompson, a human resources official with the Army's Civilian Personnel Advisory Center ("CPAC"), testified. Ms. Thompson testified that the Army switched from TAPES to NSPS in 2007 because TAPES had resulted in rating inflation and the Army wanted to better distinguish between its top-level and lower-level performers. Under TAPES, over 81 percent of employees received the highest rating possible, a rating of "Outstanding" or "1."

4.  Like TAPES, NSPS employed a "1" to "5" rating scale but under NSPS, "5" was the highest rating possible and "2," the rating assigned to Ms. Jernagin in 2007, was the second lowest rating possible.

5.  In January 2007, Sergeant Travania Fair was promoted to Chief of the Operations Branch, the same branch where Ms. Jernagin worked. As Chief of the Operations Branch, Sergeant Fair became Ms. Jernagin's first-line supervisor. Chief Warrant Officer Pamela Kent served as Ms. Jernagin's second-line supervisor.

6.  On March 1, 2007, Sergeant Fair, Officer Kent, and Ms. Jernagin met to discuss Ms. Jernagin's annual performance plan for the 2007 fiscal year. The performance plan set three objectives for Ms. Jernagin to complete during the year. Ms. Jernagin's first objective was to "serve as the Management Control Administrator (MCP) for Directorate of Logistics–Washington ensuring effective interal [sic] controls are in accordance with AR 11-2." Ms. Jernagin's second objective was to "[d]evelop policies, procedures and regulatory instruction at a 96% timeliness rate regarding the support on information technology maintenance & supply management for DOL-W organization." Ms. Jernagin's third objective was to

4

"[i]dentify our business partners and develop a partnership plan to achieve the best customer results by FY08." Sergeant Fair and Ms. Jernagin discussed each objective, and Ms. Jernagin agreed that she could perform each objective. Under NSPS, Ms. Jernagin's annual performance rating for 2007 would be based on how well Ms. Jernagin performed her designated objectives.

7.   Two months later, on May 22, 2007, Officer Kent and Sergeant Fair gave Ms. Jernagin her interim review. An interim review is an unrated mid-year evaluation of an employee. Accordingly, Sergeant Fair prepared a written evaluation of Ms. Jernagin but did not assign Ms. Jernagin a rating. Sergeant Fair prepared the written evaluation without the input of Ms. Costa. Sergeant Fair's written evaluation included positive and negative critiques of Ms. Jernagin's performance:

> Ms. Jernagin provided guidance, assistance and support to co-workers in the absence of the Branch Chief. She implemented a training program to provide all Directorate of Logistics–Washington (DOL-W) supervisors training on the Management Control Plan which contributed to the success of management controls. The material weakness paper she created was a value excess to Division Chief's [sic] for outlining weaknesses in their division.
>
> While Ms. Jernagin completed the Management Control Plan for the DOL-W, my concern was with the amount of time it took to accomplish the task. As the Management Control Administrator (MCA), her responsibility to ensure all management control evaluations, checklists, and material weaknesses were conducted as scheduled was not met. She has not provided updates or status of DOL-W weaknesses to the Director since they were noted.
>
> Ms. Jernagin must remember all assigned objectives that must be accomplished and not just focus on the one that's been completed.

8.   Sergeant Fair met and discussed the interim review with Ms. Jernagin. Sergeant Fair told Ms. Jernagin that the interim review discussed Ms. Jernagin's weaknesses and that Ms. Jernagin could not continue to work on the same objective. Ms. Jernagin told Sergeant Fair that she would try to work harder on the other objectives.

9. Sergeant Fair testified that she considered Ms. Jernagin's performance below average. Sergeant Fair testified that Ms. Jernagin often did not complete assignments on time and that Sergeant Fair had to complete several of Ms. Jernagin's management-control assignments for her. At trial, Ms. Jernagin and a coworker, Mr. Tony Acosta, provided testimony in conflict with Sergeant Fair's. Ms. Jernagin testified that she completed her assignments on time and that she completed her own work. Mr. Acosta testified that Ms. Jernagin was not late in providing him with work items, including a monthly checklist.

10. In late July 2007, Ms. Jernagin was transferred to the Property Management Branch within DOL as part of a branch reorganization. Mr. Lawrence Lawson became Ms. Jernagin's first-line supervisor, replacing Sergeant Fair, and Ms. Costa became Ms. Jernagin's second-line supervisor, replacing Officer Kent. Later, in October 2007, Mr. Lawson met with Ms. Jernagin to create a new performance plan with new objectives.

11. The annual appraisal period for the 2007 fiscal year closed on September 30, 2007. Following the close of the appraisal period, NSPS required each first-line supervisor (or Rating Official) to submit an annual performance appraisal for each of his or her employees. Each appraisal included a written assessment of the employee and a recommended rating for the employee based on the NSPS five-tiered scale. Once the Rating Official entered his or her appraisal in NSPS, the second-line supervisor (or Reviewing Official) would review the submitted appraisal for compliance with NSPS regulations. The Reviewing Official, however, could not change the recommended rating or edit the written assessment. If the appraisal complied with NSPS regulations, the Reviewing Official would sign off on submission of the appraisal to the Pay Pool. The Pay Pool, a panel of higher-level supervisors, would review the written assessment and recommended rating and would decide

by group consensus whether to approve the rating as final. The Pay Pool Manager, a member of the Pay Pool assigned to head the panel, would be responsible for entering the final rating into NSPS.

12. At the close of the 2007 appraisal period, Mr. Lawson served as Ms. Jernagin's first-line supervisor and Rating Official, while Ms. Costa served as Ms. Jernagin's second-line supervisor and Reviewing Official. Ms. Costa also served as Pay Pool Manager for the panel assigned to Ms. Jernagin.

13. Under NSPS, an employee must work under a performance plan for at least ninety days before he or she can be rated under that performance plan. Because Ms. Jernagin had worked under Mr. Lawson and Ms. Costa for less than ninety days at the close of the appraisal period, Ms. Jernagin could not be rated on the objectives designated by Mr. Lawson. Accordingly, CPAC instructed Mr. Lawson that Ms. Jernagin could only be rated on the objectives designated by Sergeant Fair in March 2007.

14. At trial, the parties offered conflicting testimony on what input, if any, Ms. Costa had on the appraisal and, specifically, the decision to rate Ms. Jernagin a "2." Mr. Lawson testified that, acting on CPAC's instructions, he contacted Sergeant Fair. Sergeant Fair testified that she then prepared a written assessment of Ms. Jernagin and recommended a "2" rating for Ms. Jernagin, which Mr. Lawson entered into NSPS. Sergeant Fair also testified that she wrote the assessment and recommended the "2" rating without input from Ms. Costa.

15. At trial, however, Ms. Jernagin and Mr. Acosta provided conflicting testimony regarding Ms. Costa's input. First, Ms. Jernagin testified that she asked Mr. Lawson why she had received a "2" and that Mr. Lawson explained, "I was directed to do this. And the next time, you'll be under me and I will do better with you." Ms. Jernagin also testified that when she asked Mr.

7

Lawson who directed him, Mr. Lawson replied, "I was directed." Second, Mr. Acosta

testified that on April 28, 2008, Mr. Lawson emailed Mr. Acosta asking Mr. Acosta to call

him. When Mr. Acosta called, Mr. Lawson explained that Ms. Costa had directed him to rate

Ms. Jernagin low and that Mr. Lawson agreed to save his own career.

16. Ultimately, a rating of "2" was recommended for Ms. Jernagin[1] and a written assessment was

prepared as follows:

> Ms. Jernagin met some of the taskings of the objective as the Management
> Control Administrator (MCA) for DOL-W . . . . Ms. Jernagin didn't distribute
> checklists that were provided to any Supervisors which could have saved time
> and avoided completing the wrong checklists if the Supervisors were issued
> the correct Management Control Checklist in the beginning. She didn't
> monitor weaknesses on a quarterly basis by preparing, presenting and briefing
> reports to the Director.

Ms. Costa reviewed the annual performance appraisal and signed off on submission of the

appraisal to the Pay Pool. The Pay Pool met, reviewed the appraisal, and approved a final

rating of "2" for Ms. Jernagin. On January 14, 2008, Mr. Lawson met with Ms. Jernagin to

discuss the appraisal, including the final rating of "2."

17. At trial, the parties offered conflicting testimony on whether Ms. Costa made age-related

comments toward Ms. Jernagin and her coworkers. Ms. Costa testified that she did not make

age-related comments and that, although she said that processes were outdated, she never

said that people were outdated. Ms. Jernagin and her coworkers—Mr. Acosta, Mr. Kenneth

Frosch, and Mr. John Euson—testified that Ms. Costa did make age-related comments

toward them and toward others.

---

[1] Ultimately, Ms. Jernagin was rated only on one of the three objectives Sergeant Fair designated
in March 2007, specifically the management-control objective. Sergeant Fair testified that she
rated Ms. Jernagin only on the Management Control Program because that was the only work
that was completed. Sergeant Fair further testified that had she rated Ms. Jernagin on all three
objectives, she would have recommended a lower rating because no work had been completed on
the other two objectives.

18. First, Ms. Jernagin testified (i) that Ms. Costa called Lee Owens "outdated" and "ancient"; (ii) that, in early 2006, during their initial meeting, Ms. Costa asked Ms. Jernagin how old she was and when Ms. Jernagin responded, Ms. Costa replied "Oh, you don't look that old"; (iii) that during a "staff call meeting" with branch and division chiefs, Ms. Costa said that one of the attendees "thinks old" and that she would "get herself a young staff to come into these meetings."

19. Second, Mr. Acosta testified (i) that while updating Ms. Costa on briefing slides, Ms. Costa said to Ms. Jernagin, "[Y]ou didn't do your job, I know you're not that stupid" and "[A]re you that old that you can't remember what I told you to do?"; (ii) that while explaining regulations to Ms. Costa, Ms. Costa called Mr. Acosta "outdated"; and (iii) that, at other times, Ms. Costa called Mr. Lawson "virtually useless" and "old-fashioned" and Mr. Euson a "[d]inosaur."

20. Third, Mr. Euson testified that (i) on several occasions, both at staff meetings and in private, Ms. Costa called him "outdated" and asked if he was looking for other jobs; and (ii) that in a staff meeting to discuss converting to NSPS, Ms. Costa said that some employees would "not make it" in NSPS and then said "Mr. Euson, did you hear me?"

21. Lastly, Mr. Frosch testified (i) that Ms. Costa constantly referred to him as an "old timer" and (ii) that in a meeting with Ms. Costa and Officer Kent, Ms. Costa began discussing "old timers" not adapting well and referred to Mr. Lawson as a "dinosaur."

## IV. CONCLUSIONS OF LAW

The Court finds for Defendant John M. McHugh, Secretary of the Army, on Plaintiff Lavina D. Jernagin's claim of age discrimination because Ms. Jernagin failed to establish by a preponderance of the evidence that age bias by Ms. Costa was the but-for cause of Ms.

Jernagin's "2" rating. At trial, Ms. Jernagin alleged a theory of causation whereby Ms. Costa had a bias against employees over the age of fifty and exercised this bias by ordering Mr. Lawson to rate Ms. Jernagin a "2." The Court finds that the evidence adduced at trial established that Ms. Costa had an age bias against Ms. Jernagin but that Ms. Costa's age bias could not have impacted the decision to rate Ms. Jernagin a "2": first, because Sergeant Fair alone made the decision to rate Ms. Jernagin a "2" and, second, because Ms. Costa's role with respect to the rating was largely administrative.

The Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer to discriminate against an employee at least the age of forty on the basis of the employee's age. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 140–41 (2000); *see* 29 U.S.C. § 623(a)(1). The elements of an ADEA claim are that (i) the employee is covered by the ADEA, (ii) the employee has suffered an unfavorable employment action by an employer covered by the ADEA, and (iii) the action occurred under circumstances in which "but for [the] employer's motive to discriminate against [the employee] because of his age, he would not (have suffered the action)." *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 238 (4th Cir. 1982). The Supreme Court has clarified that the causation to be proven in an ADEA case is "that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 178 (2009). But-for causation is not established where age was merely a motivating factor in the challenged employment decision. *Id.* at 180.

The plaintiff may satisfy his burden of persuasion by proceeding under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or "under ordinary methods of proof by any direct or indirect evidence relevant to and sufficiently probative of the issue." *EEOC v. Western Electric Co., Inc.*, 713 F.2d 1011, 1014 (4th Cir. 1983)

10

(citations omitted). Under the burden-shifting framework, a plaintiff must first establish a prima facie case of age discrimination, including that employees similarly situated to the plaintiff were treated more favorably than the plaintiff. Here, Ms. Jernagin produced no evidence that similarly situated employees received higher ratings than Ms. Jernagin. Thus, to succeed on her age-discrimination claim, Ms. Jernagin had to proceed under ordinary methods of proof. Additionally, at trial, the parties did not dispute the elements of coverage and unfavorable action. Thus, to succeed on her age-discrimination claim, Ms. Jernagin had to establish under the ordinary methods of proof "the difficult, but narrow, motivational" issue of whether she "was (treated unfavorably) because of [her] age." *Lovelace*, 681 F.2d at 239 (quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014 (1st Cir. 1979)).

As a threshold matter, the Court finds that Ms. Costa had a bias against older employees. The evidence adduced at trial established that Ms. Costa made several derogatory, age-based comments toward Ms. Jernagin and her coworkers. These comments included (i) Ms. Costa asking Ms. Jernagin her age at their initial meeting, (ii) Ms. Costa telling Ms. Jernagin "Are you that old that you can't remember what I told you to do?," (iii) Ms. Costa calling various employees "old timer," "outdated," "old-fashioned," and "dinosaur." At trial, Ms. Costa denied making the comments, testifying that she called processes, not employees, outdated.

However, the Court finds the contrary testimony of Ms. Jernagin, Mr. Acosta, Mr. Euson, and Mr. Frosch to be credible. Moreover, Ms. Costa produced no evidence to suggest that comments like "old timer" and "dinosaur" were directed at the processes used by her employees rather than at the employees themselves. For these reasons, the Court finds that Ms. Jernagin established by a preponderance of the evidence the existence of age bias on the part of Ms. Costa.

11

To succeed on her claim of age discrimination, Ms. Jernagin had to establish not age bias but rather a causal nexus between age bias and the decision to rate Ms. Jernagin a "2." Ms. Jernagin failed to establish such a causal nexus because the evidence demonstrates that Ms. Costa had no input into the decision to recommend a "2" and that her role with respect to the rating process was largely administrative. At trial, both Sergeant Fair and Mr. Lawson testified that Sergeant Fair and Sergeant Fair alone made the decision to recommend the "2." Sergeant Fair and Mr. Lawson testified that Sergeant Fair made the rating recommendation because, under NSPS regulations, Ms. Jernagin could only be rated on the objectives she performed while under Sergeant Fair.

The Court finds the testimony of Sergeant Fair and Mr. Lawson to be credible for four reasons. First, as Ms. Thompson testified, under NSPS, an employee could only be rated under objectives performed for at least ninety days. Given the timing between Ms. Jernagin's reassignment to Mr. Lawson and the end of the appraisal period, it follows that the only objectives on which Ms. Jernagin could have been rated were those she performed while under Sergeant Fair. Second, Sergeant Fair's testimony that Ms. Costa had no input and Mr. Lawson's testimony that he had no input are credible given that the rating was to be based on work performed for Sergeant Fair, not for Mr. Lawson or Ms. Costa. Third, the "2" rating is consistent with Sergeant Fair's interim review of Ms. Jernagin, in which Sergeant Fair raised concerns with the timeliness of Ms. Jernagin's work.[2] Fourth, the "2" rating is consistent with Ms. Thompson's

---

[2] At trial, Ms. Jernagin attempted to contradict Sergeant Fair's testimony that her work was often untimely and incomplete. To contradict this testimony, Ms. Jernagin presented her own testimony and the testimony of her coworker, Mr. Acosta. Because "[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff," *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir. 1996) (quotation omitted), or the plaintiff's coworkers, *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 235 (4th Cir. 1991), the Court does not take Ms. Jernagin's and Mr. Acosta's testimony as discrediting Sergeant Fair's evaluation.

testimony that, under NSPS, an employee with timeliness issues would most likely be rated a "2." For these reasons, the Court credits the testimony of Sergeant Fair and Mr. Lawson and finds that Sergeant Fair made the decision to recommend a "2" for Ms. Jernagin.

Contrary to Ms. Jernagin's allegations, Ms. Costa's role in the rating process was largely administrative. Ms. Costa served as both Ms. Jernagin's Reviewing Official and her Pay Pool Manager. Both of these roles involved ensuring that the *process* of preparing Ms. Jernagin's appraisal conformed to NSPS regulations. Ms. Thompson testified credibly on this subject. Ms. Thompson testified that the role of the Reviewing Official was to assess whether the Rating Official followed the correct procedures in preparing the recommended rating. Consistent with this role, Ms. Costa as the Reviewing Official could not change Ms. Jernagin's recommended rating or edit her written assessment. Ms. Thompson also testified that determination of the final rating is made by a consensus of the Pay Pool panel, not by the individual Pay Pool Manager. Consistent with this role, Ms. Costa as Pay Pool Manager entered the final "2" rating into NSPS, but the determination as to what that final rating would be was made a consensus of the Pay Pool panel. Ms. Costa's role as Pay Pool Manager, like her role as Reviewing Official, was largely administrative.

Because Sergeant Fair made the decision to recommend a "2" for Ms. Jernagin and because Ms. Costa's role in the rating process was largely administrative, age bias on the part of Ms. Costa had no nexus with the decision to rate Ms. Jernagin a "2." Accordingly, Ms. Jernagin failed to establish by a preponderance of the evidence that a "but-for" causal nexus existed between Ms. Costa's age bias and the decision to rate Ms. Jernagin a "2."

## V. CONCLUSION

For the foregoing reasons, the Court finds in favor of Defendant John M. McHugh and against Plaintiff Lavina D. Jernagin on Count I of Ms. Jernagin's Second Amended Complaint. Accordingly, **IT IS HEREBY ORDERED** that judgment is entered in favor of Defendant John M. McHugh and against Plaintiff Lavina D. Jernagin on Count I of Ms. Jernagin's Second Amended Complaint. A separate Rule 58 Judgment Order will issue with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

Entered this _18th_ day of February, 2014.

Alexandria, Virginia

2 / 18 / 2014                                      _____/s/_____

Gerald Bruce Lee
United States District Judge

14